# EXHIBIT A

BERNEY & SANG
By:    Robin D. Lipp, Esquire
Identification No.: 328374
       David J. Berney, Esquire
Identification No.: 67882
1628 JFK Boulevard, Suite 1000
Philadelphia, PA 19103
(215) 564-1030
rdlipp@berneylaw.com
djberney@berneylaw.com

*Filed and Attested by the
Office of Judicial Records
26 FEB 2021 05:47 pm
A. SILIGRINI*

                                                        Attorneys for Plaintiff
=====================================================================
Charles Green                        :
5101 North Broad Street              :
Apartment 3                          :
Philadelphia, PA 19141               :
                                     :          PHILADELPHIA COUNTY
            v.                       :          COURT OF COMMON PLEAS
                                     :
Security Industry                    :          FEBRUARY TERM, 2021
Specialists, Inc.,                   :          No. _____
630 Freedom Business Center          :
3rd floor                            :
King of Prussia, PA 19406            :
=====================================================================

## NOTICE TO DEFEND
## NOTICE

    **You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

    *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association
Lawyer Referral
and Information Service
1101 Market St., 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-6333**

## AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados**
**De Filadelfia**
**Servicio De Referencia E**
**Informacion Legal**
**1101 Market St., 11th Piso**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333**

Case ID: 210202682

BERNEY & SANG
By:     Robin D. Lipp, Esquire
Identification No.: 328374
        David J. Berney, Esquire
Identification No.: 67882
1628 JFK Boulevard, Suite 1000
Philadelphia, PA 19103
(215) 564-1030
rdlipp@berneylaw.com
djberney@berneylaw.com                                    Attorneys for Plaintiff
================================================================

| | | |
|---|---|---|
| Charles Green | : | |
| 5101 North Broad Street | : | |
| Apartment 3 | : | |
| Philadelphia, PA 19141 | : | |
| | : | PHILADELPHIA COUNTY |
| v. | : | COURT OF COMMON PLEAS |
| | : | |
| Security Industry | : | FEBRUARY TERM, 2021 |
| Specialists, Inc., | : | No. _____ |
| 630 Freedom Business Center | : | |
| 3rd floor | : | |
| King of Prussia, PA 19406 | : | |

================================================================

## COMPLAINT

**INTRODUCTION**

1.     Plaintiff, Charles Green, brings this action against Defendant, Security Industry

Specialists, Inc. (SIS) for racial discrimination in employment.

2.     Mr. Green has fully exhausted his administrative remedies with the Pennsylvania

Human Relations Commission and the United States Equal Employment Opportunity

Commission.

**PARTIES**

3.     Mr. Green resides in Philadelphia, Pennsylvania.

4.     Mr. Green resided in Philadelphia at all relevant times.

5.     Defendant, SIS, operates in Pennsylvania.

Case ID: 210202682

6.      SIS, at all relevant times, conducted business in Philadelphia, Pennsylvania.

7.      SIS has an office at 630 Freedom Business Center, 3rd Floor, King of Prussia, PA 19406.  However, its registered address with the Pennsylvania Department of State is 6071 Bristol Parkway, Culver City, CA 90230-6601.

8.      At all times, SIS acted through its agents, including its employees.

9.      At all relevant times, SIS had four or more employees.

10.     Mr. Green is a former employee of SIS.

**FACTS**

***Background***

11.     Mr. Green is African American.

12.     On or about July 24, 2017, Mr. Green commenced employment with SIS.

13.     During Mr. Green's employment, SIS employed in its Pennsylvania and New Jersey offices only two African Americans: Mr. Green and one other individual.

14.     Mr. Green started his employment at the same time as two other individuals, Ryan Clemens and John Collins, both of whom are white.

15.     SIS hired Mr. Green, Mr. Clemens, and Mr. Collins to serve as Loss Preventions Specialists.

16.     Their job duties included monitoring theft at retail stores, specifically, Apple stores in Philadelphia and the surrounding area.

17.     Mr. Green entered his employment with SIS with several years of experience in loss prevention.

18.     Mr. Green excelled at his Loss Prevention Specialist position.

19.     He never received a negative performance review from SIS.

Case ID: 210202682

20.     He never received any discipline from SIS.

21.     SIS paid Mr. Green $19 per hour.

22.     SIS afforded Mr. Green 40 hours of paid work per week during his employment.

23.     SIS provided Mr. Green health and dental insurance.

24.     Mr. Green's supervisor at SIS was Anthony Baglino.

25.     Mr. Baglino is white.

26.     Mr. Baglino also supervised Mr. Clemens and Mr. Collins.

27.     Mr. Green and Mr. Collins were on friendly terms while employed at SIS and shortly afterwards. They shared information with each other about Mr. Baglino.

28.     Mr. Baglino's supervisor at SIS was Christopher Orsogna.

29.     Christopher Orsogna is white.

***SIS demonstrated a pattern of racial hostility toward Mr. Green and other employees***

30.     Mr. Baglino made racist comments throughout Mr. Green's employment.

31.     In a conversation with Mr. Collins, Mr. Baglino called Mr. Green a "nigger."

32.     Within the first few weeks of Mr. Green's employment, Mr. Baglino made racist remarks to Mr. Green or in Mr. Green's presence.

33.     Mr. Baglino, for example, told Mr. Green that he (Mr. Baglino) tried to hire the "whitest Black guys" he could find.

34.     Mr. Baglino also referred to persons of Hispanic origin as "spics."

35.     SIS's management structure prevented Mr. Green from reporting Mr. Baglino's comments.

36.     Because SIS's headquarters are in California, Mr. Baglino himself was the person to whom Mr. Green was supposed to report job-related issues.

Case ID: 210202682

37.     Mr. Green was concerned that reporting Mr. Baglino to Human Resources would jeopardize his (Mr. Green's) employment.

38.     On another occasion, Mr. Baglino referred to SIS's one other African American employee as "the whitest Black guy I know."

39.     In multiple conversations with Mr. Collins, Mr. Baglino made racist remarks about Mr. Green and others.

40.     On Mr. Collins' first day of training, Mr. Baglino instructed him to "look at these niggers and watch them" when referring to Black customers in stores served by SIS.

41.     It was part of the culture at SIS for Mr. Baglino to speak to his white supervisees using racial epithets for minorities.

42.     Mr. Baglino expected his white supervisees to respond using similar racist language.

43.     In the presence of Mr. Green, Mr. Baglino often used more guarded language.

44.     Mr. Baglino would generally demonstrate his racial animus through his actions.

45.     In January 2018, SIS had an opening for a Loss Prevention Specialist position.

46.     Mr. Green recommended a colleague who is African American for the open Loss Prevention Specialist position.

47.     Mr. Baglino did not hire the African American colleague.

48.     Another African American applied for the position as well, but Mr. Baglino did not hire him.

49.     In a text-message exchange with Mr. Collins, Mr. Baglino referred to the latter African American applicant as a "nigger."

4

Case ID: 210202682

50.     The text message exchange in which Mr. Baglino referred to the latter African American applicant as a "nigger" read as follows:

> Baglino:     Yo run this name in that PA app you have . . . [applicant's name] from PA
>
> Collins:     What kinda name is that
>
> Baglino:     Nigger

51.     A true and correct copy of the text message exchange is attached as Exhibit A.

52.     In another text message, Mr. Baglino sent pictures of the applicant to Mr. Collins.

53.     In that text message, Mr. Baglino sent pictures of the applicant to Mr. Collins to show that the applicant is African American.

54.     In that text message, Mr. Baglino referred to the applicant as "Another Charles."

55.     In that text message, Mr. Baglino referred to the applicant as "Another Charles" to disparage the applicant and to refer disparagingly to the applicant's race (African American).

56.     A true and correct copy of the text message between Mr. Baglino and Mr. Collins is attached as Exhibit B.

57.     Employees and supervisors at SIS communicated and shared information about their work with each other using a Google chat group thread.

58.     Employees and supervisors frequently posted racist and sexist comments on the thread.

59.     For example, on one occasion, Mr. Green apprehended an African American woman for shoplifting and posted a confirming photograph of the incident on the group thread in accordance with company policy.

60.     Mr. Baglino commented on the photograph: "she's hot for a Black chick."

Case ID: 210202682

61.     Taking their lead from Mr. Baglino, several SIS employees responded in agreement.

***During Mr. Green's employment, he faced different conditions because of his race***

62.     Mr. Baglino assigned Mr. Green shifts at four different Apple stores in Philadelphia and the surrounding area, including stores in Philadelphia, Ardmore, Willow Grove, and King of Prussia.

63.     Assigned to four stores, Mr. Green had to regularly travel across the Philadelphia region and had to manage multiple store schedules.

64.     Mr. Baglino assigned Mr. Collins to only two Apple stores.

65.     Mr. Green was assigned to more stores than his white peers, facing a more difficult work burden.

66.     Despite being assigned to multiple stores, Mr. Green excelled in his position.

67.     The Apple stores where Mr. Green worked consistently experienced less theft than other stores.

68.     Mr. Green's stores praised his performance as a Loss Prevention Specialist.

69.     Despite Mr. Green's superior performance, Mr. Baglino would find racially inflected reasons to criticize his work.

70.     For example, Mr. Green would write Incident Reports to document shoplifting incidents.

71.     Mr. Baglino would pick apart the language in Mr. Green's reports and scold Mr. Green for minor grammatical, spacing, or punctuation errors.

72.     After finding such an alleged error, Mr. Baglino would reject the report, re-write the report, and inform higher-level supervisors that he had rejected Mr. Green's report.

Case ID: 210202682

73.     As a result of Mr. Baglino's behavior, Mr. Green began using writing assistance software—the "Grammarly" application—to find and correct any language errors.

74.     This made no difference to Mr. Baglino, who would still find reasons to criticize the language of Mr. Green's reports, reject the reports, and scold Mr. Green for alleged mistakes of language.

75.     Mr. Baglino did not criticize the Incident Reports of the white employees he supervised in that way.

76.     Mr. Baglino tolerated poorly written reports, grammatical errors, and even false reports from white employees.

### *SIS terminated Mr. Green because of his race*

77.     On January 18, 2018, the Apple store on Walnut Street in Philadelphia recorded on video two individuals (a male and a female) stealing merchandise.

78.     Mr. Green was assigned to monitor that store.

79.     Per Mr. Green's training, including his training at SIS, he followed the five-step process for loss-prevention: (a) monitor individuals upon the entering the store, (b) watch an individual select merchandise, (c) identify where the individual conceals the merchandise, (d) maintain constant observation, and (e) observe the individual exiting the store.

80.     Mr. Green was trained to complete all five of those steps before intervening in a theft.

81.     Pursuant to SIS protocol, Mr. Green extracted a picture of the individuals from the video and posted the picture on SIS's Google thread. Mr. Green also created a "Be on the Lookout" (BOLO) notice for SIS personnel about the individuals.

Case ID: 210202682

82.     On January 19, 2018, around 3:00 p.m., the two individuals returned to the Apple store on Walnut Street.

83.     Mr. Green was working his shift in the store at the time.

84.     Store officials directed Mr. Green to monitor the individuals.

85.     Mr. Green did so, and the individuals appeared to have been engaging in theft yet again.

86.     While Mr. Green was monitoring the individuals, the male confronted Mr. Green.

87.     The male accused Mr. Green of looking at his girlfriend (the female individual).

88.     The male threatened Mr. Green with a knife.

89.     Mr. Green then informed a Philadelphia police officer, who was already in the store, about the theft and the threat.

90.     The Philadelphia police officer arrested the individuals.

91.     Mr. Green called Mr. Baglino to report the events.

92.     Mr. Baglino told Mr. Green that he "fucked up."

93.     After telling Mr. Green that he had "fucked up," Mr. Baglino hung up.

94.     Shortly thereafter, Mr. Baglino and Mr. Orsogna called Mr. Green.

95.     Mr. Orsogna yelled at Mr. Green.

96.     Mr. Orsogna also threatened to physically harm Mr. Green because Mr. Green notified the police about the two individuals' actions.

97.     Mr. Green could not understand why his supervisors would reprimand him for merely fulfilling his duties by the book.

98.     In the heat of the moment, Mr. Green responded to Mr. Orsogna that he planned to resign as a result of his mistreatment at SIS.

8

Case ID: 210202682

99.     He hung up the phone and returned to his post at the Apple store.

100.    Mr. Baglino then called Mr. Green and told him to leave his badge and handcuffs at the store and to go home.

101.    The next morning, Mr. Green contacted Mr. Baglino to inform him that he had decided not to resign, despite his mistreatment and his prior consideration to do so.

102.    Mr. Green tried to work the next day.

103.    Mr. Baglino did not allow him to return to the work.

104.    On January 24, 2018, Mr. Baglino submitted an Employee Separation Form, terminating Mr. Green from SIS.

105.    But for Mr. Green's race, he would not have been terminated from SIS.

***Mr. Green has attempted to mitigate the damage SIS caused, but he still suffers harm***

106.    After his termination, Mr. Green applied for dozens of jobs.

107.    Between mid-February 2018 and November 25, 2019, Mr. Green was either employed at part-time jobs that paid less than his former job at SIS—with no benefits—or been unemployed and actively searching for jobs.

108.    Since November 26, 2019, Mr. Green has been employed as a contractor, working 40 hours per week with no benefits. He started at $18 an hour, and received a raise to $19 an hour on January 18, 2021.

109.    Mr. Green's combined hourly wages and benefits remain lower than they were at SIS.

110.    Mr. Green suffered emotional distress as a result of his mistreatment at and termination from SIS.

Case ID: 210202682

## COUNT I – RACIAL DISCRIMINATION IN EMPLOYMENT –
## VIOLATIONS OF THE PENNSYLVANIA HUMAN RELATIONS ACT AND THE
## PHILADELPHIA FAIR PRACTICES ORDINANCE

111.    The above and below paragraphs are incorporated herein by reference.

112.    In violation of the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance, SIS discriminated against Mr. Green based on his race.

113.    SIS discriminated against Mr. Green with respect to the terms, conditions, and privileges of his employment.

114.    SIS discriminated against Mr. Green by creating a racially hostile work environment.

115.    SIS discriminated against Mr. Green by discharging him from his employment based on race.

116.    The allegations above constitute unlawful discriminatory practices in violation of the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance.

117.    As a direct and proximate result of SIS discriminating against Mr. Green due to his race, Mr. Green has suffered and will suffer wage loss and other job-related benefits such as the loss of medical insurance coverage.

118.    As a direct and proximate result of SIS discriminating against Mr. Green due to his race, Mr. Green has experienced pain and suffering, emotional distress, and loss of life's pleasures.

119.    As a direct and proximate result of SIS discriminating against Mr. Green due to his race, Mr. Green has incurred or will incur medical and/or psychological bills.

120.    Mr. Green requests that SIS make him whole by awarding him compensation for (a) past and future wage loss and for other job-related benefits, (b) medical and psychological

Case ID: 210202682

expenses, (c) any other out-of-pocket losses, (d) pain and suffering, emotional distress, and loss

of life's pleasures, (e) attorney's fees and costs, (f) interest, (g) any other compensatory damages

cognizable under the Pennsylvania Human Relations Act and the Philadelphia Fair Practices

Ordinance, and (h) all other such relief that this court deems appropriate.

      121.   Mr. Green further requests punitive damages under the Philadelphia Fair Practices

Ordinance due to the egregious nature of SIS's conduct.

      122.   Mr. Green also requests an order requiring SIS to eliminate all unlawful

discriminatory practices and procedures, including the effects thereof, and to take further

affirmative action necessary and appropriate to remedy the violations complained of here.


                Respectfully submitted,

                BERNEY & SANG


                /s/Robin D. Lipp
                ROBIN D. LIPP, ESQUIRE
                Pa. Bar ID No. 328374
                DAVID J. BERNEY, ESQUIRE
                Pa. Bar ID No. 67882
                8 Penn Center
                1628 JFK Boulevard, Ste. 1000
                Philadelphia, PA 19103
                rdlipp@berneylaw.com
                267-507-4557 (tel)
                215-751-9739 (fax)

                Attorneys for Plaintiff Charles Green

Dated: February 26, 2021

Case ID: 210202682

# Exhibit A

Case ID: 210202682



Case ID: 210202682



Case ID: 210202682

# Exhibit B

Case ID: 210202682



Case ID: 210202682



Another Charles

Case ID: 210202682

## **VERIFICATION**

I have read the attached Complaint.  I verify that the Complaint is based on information provided to counsel and which has been gathered by counsel during the investigation of the case.

The language of the Complaint is that of counsel.  I verify that the factual averments in the Complaint are true and correct to the best of my knowledge, information, and belief.  To the extent that the contents of the Complaint are that of counsel and/or amount to legal terminology, I have relied upon counsel in making this verification.

It is understood that the statements in this verification are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: _2/4/21_____

_____
Charles Green